Final case set for argument this morning is Nunez v. Bureau Chief Joseph Lima, No. 17-2852. Good morning, your honors. My name is Rosa Nunez. I'm here as a pro se appellant. The purpose of my oral argument today is to respectfully request that your honors reverse the decision of the Southern District Court on granting the defendant's summary judgment. There's genuine material facts in dispute, and the Southern District Court decided, although there's so many facts in dispute, to grant the defendant's summary judgment. I'm totally opposed to that decision, because in fact, Mr. Lima did sexually harass me and subjected me to a hostile working environment that caused me psychological damages. And the agency did not take any corrective action to prevent me from suffering damages or to find out what I was going through. Ms. Nunez, could I ask a question, please? One of the retaliatory acts that you described, just a second. One of them was that your supervisor, or maybe more than one, were unsubmitting your time sheets. And I wasn't sure I understood exactly what that meant. Could you explain, please? Yes, that was one of the many retaliatory actions that they took that did not cause any economic loss or anything of that sort. But they were doing so many things to me that it was very hard for me to keep up, that I ended up on medication. The judge was the one who picked that particular unsubmission of the time sheet. I hired an attorney, and the attorney misrepresented me. Could you just explain first, what does it mean to unsubmit a time? I'm sorry, to unsubmit a time sheet means that we are required to submit our time sheet every two weeks, for a period of two weeks. And I submitted it electronically, I submitted it in a system, it's called the last system. And Mr. Medina, I don't know if he was, who was my immediate supervisor at the time. I don't know if he was for the purpose that I didn't get paid. I don't know what his motive was. He unsubmitted my time sheet after I submitted it. What was it? Does that mean he canceled this session and made you do it again? Yes, but not for me to do it again. So I guess to delay it so that the time sheet office does not receive it on time. They will receive a notice from the time sheet office indicating that your time sheet was unsubmitted, or you haven't submitted your time sheet. I don't know what his motive was. But the point is that if we don't submit the time sheet on time, there could come a period that we would not get paid. Did that happen? Was there a, what were the consequences? It did not get, it didn't get to that, because when I was notified that my time sheet was unsubmitted, I went to Mr. Medina and I asked him, did he unsubmit my time sheet? Because he's the only one, and I have the bureau chief to be able to do that. Nobody else has the authority. So he denied doing it, and I contacted the time sheet office, and they told me that it was Medina who had unsubmitted more than one time sheet, as a matter of fact. So that happened twice, that Mr. Medina, is that right? In September of 2018? Yeah, I don't remember the exact date, but I think it happened, it could have been twice. But one of them was more than one time sheet unsubmitted, that having unsubmitted previously, and the last one that I submitted it. And what other actions do you believe constituted retaliation against you for filing a complaint? Your Honor, I don't know if you- I have your papers, and I have- If you have my 44 page amended complaint, and- Could you just highlight a few, because I noted that you're an assignment- Yeah, one of them was that I'm a very responsible worker, and I submit my work on time. And I submitted a violation of parole report against somebody, and they were supposed to process their report. And if within 30 days, there's no record that the report was submitted, then you are in violation of the policy, because you're supposed to submit that within 30 days. So it took them, I don't remember from the top of my head, because I did not go over, like a long, long time to process. Did you suffer any, did you get demoted, or did your pay get reduced? No, Your Honor, I did not suffer any economic losses, but I think that would have been easier than what I suffered. I ended up in medication. The hostile working environment was so severe and perversive, okay? That Mr. Lima turned all my workers against me. They were making fun of me, they humiliated me, I got intimidated. My immediate supervisor tried to accuse me of having a sexual relationship with a female that I supervised, who was gay. And somebody had reported to me that she was having sexual intercourse with another parole officer who used to supervise her. I'm required to report that kind of situation if it's brought to my attention. And I brought it to my immediate supervisor's attention as required, and he tried to turn it on me and said that I was the parole officer who was having a sexual relationship with somebody that I used to supervise. I went through so many humiliation, through so many things that have never in my life been in mental health treatment or medication. I never knew what a panic attack was until I had my first one. And I had my first panic attack and I felt like I was dying. I can talk when I talk about that, it's like going back and getting sick again. Let me get some water, please. Yes, yeah. You know what, why don't you, you have a minute rebuttal. Why don't you sit down and compose yourself, have some water. We'll hear from the state, and then you'll have a chance to speak again for a minute, okay? Good morning, David Lawrence III, Assistant Solicitor General, appearing on behalf of the Defendant's Appellees. The district court correctly entered summary judgment in favor of the defendants. In particular, there was no material issue of fact on plaintiff's claim under the New York State human rights law for sexual harassment based on an alleged hostile work environment. That is because the plaintiff failed to show that her supervisors, Lima and Medina, committed alleged harassment that was so severe or pervasive that it altered the conditions of her employment. Well, she says, after the supervisor said he was infatuated with her, and she told him that would end the relationship, because she didn't, the relationship of going out to either plays or movies. She also alleges that thereafter, he told her it's double or two dates, or there'll be a consequence, didn't he? Well, the purported consequence was that she would have to transfer her contacts from her old work phone to her new work phone. That's not really a threat, that's simply a part of her job. It's not part of her job? It is part of her job to transfer her contacts to her new phone. He said, after she told him she wanted no further amorous relationship with him or even dating, he said to her, here's a task you have to do. And if you don't do this task, if you don't go out on the dates with me, I'm going to give you this extra assignment. Your Honor, this was simply part of her job to transfer her contacts to her new phone. This was not any sort of any serious consequence to her. I don't mean to- How does a supervisor get to tell someone that they have to do any task, even if it means moving the pencils around, or that he has to date him, or else he has to do this other task? The district court found that this did not meet the stringent legal standards to establish this statutory- And you say that's New York's view of the law? I'm saying under the New York State human, excuse me, is your Honor asking if that's the state's view of what should properly be done, or if that's the statutory standard, because the statutory standard of the New York State's human rights law is the same as under Title VII. And it's a very stringent standard. You have to either show a severe or a environment that is a how to work environment, or you have to show that you suffered an adverse job consequence. That's a general rule when you're testing a supervisor's remarks. I understand that. But this is a supervisor who has first invited her out, then told her he's infatuated with her, then been rebuffed, and then tells her she's got to do certain things. That's not just the same as in general saying I want you to get your phone fixed. Your Honor, the court found that first under Title VII that those claims based on that conduct was time barred. And further, that there was no, as far as a quid pro quo harassment claim, there was no tangible job action such as a demotion or a standard. Apart from what was time barred, the judge did exercise supplemental jurisdiction over part of the state law claim, is that right? Yes, Your Honor. Over the New York State human rights law. The city claim. Correct, Your Honor, because that's a different legal standard in the court. So the city claim is left for subsequent litigation. Yes, and what happened then is the plaintiff filed a claim, tried to file a claim in the New York Court of Claims, was denied leave to file a late claim that occurred just a few months ago. But the court of claims specifically said that she could still file her New York City human rights law claim against Mr. Lima in state supreme court. I don't know whether she's done that. She can do that. Now there may be legal bars that a time bar or whatever, but the court of claims said that she could and the district court said she could. Does New York revive a case dismissed from federal court? Yes, Your Honor, I just don't want to bind the state by saying what defenses we may or may not have to that claim if it's brought in supreme court. But the district court dismissed that claim without prejudice. And the court claims said that it could be re-brought in supreme court. City claim. City human rights law claim, yes, Your Honor. He exercised supplemental jurisdiction over the state law claim. Do you think he was right to do that? Yes, Your Honor, the district court's correct reasoning was that it's the same legal standard as the title seven claim. And so if the court was going to rule on the title seven, it should rule on the human rights law claim at the same time. Don't you think we ought to give New York a chance to tell, New York courts a chance to tell us whether they think what he did violates their law? No, Your Honor, because it's clear under this court's case law, it's the same legal standard that applies. So the district court correctly found that it would be a waste of judicial resources to have the state courts review the same claim under the same legal standard. That assumes the state court would agree with the federal court. Well, the general principle is that you get one bite of the apple, and if the federal court found that the claim was not established, that's the opportunity that the plaintiff gets. But on the merits, you don't think there's a violation of the state law by what this supervisor did after she rebuffed him? No, Your Honor, in all of the circumstances where the supervisor did not make any romantic overture on the outings that they went on, the plaintiff testified that she believed that these were simply friendly outings. The fact that the supervisor then persisted in trying to ask her out when she then understood that it was romantic in nature, that does not meet the very difficult legal standards to establish her claims under Title VII or the state human rights law. Okay, thank you. We'll hear from Ms. Nunez again. You have a minute more, Ms. Nunez. Yes, Your Honors. At first, Mr. Lima made it sound innocent and that he was asking me out innocently because I guess he knew my character and he knew I wouldn't accept any of his invitation. I did not know he was infatuated with me until he declared it to me. I believe that they violated my rights, and I believe that the agency is responsible. They are liable for what happened to me, for the psychological damages that I have suffered. I have been having problems like calling words and dealing with my immediate memory. I have gone through a lot. I am on medication. They did not take any action to correct the situation and kept him working under me for two more years after I made my complaint. And I need justice, okay? I've been re-victimized by attorneys. There was an attorney that I had to file a complaint against, okay? And this attorney misrepresented me. I don't know what the deal he had with the Attorney General. Ms. Nunez, are you pursuing a claim in the state court under the New York City law? As per the judge decision, I tried to follow that because I don't want to stay beside justice. And they did miss the case. They said that they're not able to take the case. I'm not quite sure why, but one of the reasons it could be because it's the statute or limitation. I think I'm entitled to the Title VII law and the district court heard in their decision. I do have a lot of issues or material facts. I should be left to a jury to decide whether Lima denies the allegation or whatever the situation. That's for a jury to decide when I present all my case to them and they see what's going on. It was not for the court to make that decision, Your Honor, and I've been through a lot. Judge Nunez. Did a lawyer assist you in presenting this complaint? No, not at all, not at all. That's another thing. I just want to know, you did this typing entirely yourself, the writing? Yeah, the writing I did myself, but somebody helped me with the typing because I'm not very good with the computer. But no lawyer assisted you? No lawyer, I have to do my own research. I have to do my own research. And every time that I have to deal with this case, I have to take a family time because it's very stressful. It's anxiety, I have to take break in between. It's really, really hard for me and nobody has given me justice, okay? And nobody has helped me, it's really hard. I understand that lawyers do not like to take this type of cases, particularly when the attorney general office is involved. Because they are afraid of being investigated or whatever the situation. But the thing is that you cannot find any lawyer whether you pay them or not to help you with the situation. And I've been dealing this all by myself. And I have spent the 2015 and 2016 Christmas and New Year just working on this case, on doing paperwork. And nobody have helped me or helped me. Thank you very much. We understand and we'll look at your papers very carefully. Thank you both. That concludes our calendar for oral argument today. The clerk will please adjourn court.